No. 89-189

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

CLIFFORD R. LEVERETT,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Ira Eakin, Billings, Montana

    For Respondent:

    Hon. Marc Racicot, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

    Harold Hanser, County Attorney; Brent Brooks, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  May 24, 1990

Decided:  September 18, 1990

FILED

'90 SEP 18 AM 11 02

ED SMITH, CLERK
MONTANA SUPREME COURT

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Following trial in the Thirteenth Judicial District Court, Yellowstone County, a jury found appellant Clifford R. Leverett guilty of negligent homicide for striking and killing a pedestrian with his automobile. Leverett now appeals, primarily alleging errors in evidence and jury instructions related to his driving under the influence of alcohol. We reverse and remand.

## FACTS

Late in the afternoon of September 24, 1988, appellant Leverett was involved in an automobile accident near the curve where Sixth Avenue North leads into Division Street in downtown Billings, Montana. After rounding the curve, Leverett's car crossed from the outside lane of traffic through the inside lane and two oncoming lanes and crashed into a parked car. Somewhere near the centerline, his vehicle struck a pedestrian who died the next morning of injuries. Following the accident, the appellant underwent field sobriety tests and a breath test. The breath test registered his blood alcohol content at .121. The State subsequently charged Leverett with negligent homicide, and a jury found him guilty.

Leverett now appeals his conviction and raises a number of issues related to the evidence and jury instructions concerning intoxication. We decline to discuss every issue raised by the appellant because one is sufficient to reverse his conviction and

remand the case for a new trial. The District Court's jury instruction that a blood alcohol level greater than .10 raised a mandatory rebuttable presumption that the appellant was under the influence of alcohol violated his right to due process under the Fourteenth Amendment of the United States Constitution.

## THE CHALLENGED INSTRUCTIONS

Instruction No. 11 tracked verbatim § 61-8-401, MCA, providing in pertinent part:

> Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person driving or in actual physical control of a vehicle while under the influence of alcohol, the concentration of alcohol in the person's blood at the time alleged, as shown by chemical analysis of the person's blood, urine, breath, or other bodily substance, shall give rise to the following presumptions:
>
> . . . .
>
> (c) If there was at that time an alcohol concentration of 0.10 or more, it shall be presumed that the person was under the influence of alcohol. Such presumption is rebuttable.
>
> The provisions of subsections A-C do not limit the introduction of any other competent evidence bearing upon the issue of whether the person was under the influence of alcohol.

Jury Instruction No. 12 quoted § 30-1-201(31), MCA, stating:

> "Presumption" or "presumed" means that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its nonexistence.

3

## THE SCOPE AND PERSPECTIVE OF ANALYSIS

The current analysis of whether a jury instruction containing an evidentiary presumption in a criminal case violated the defendant's due process rights follows a procedure established by the United States Supreme Court in Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, and Ulster County Court v. Allen (1979), 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777. The United States Supreme Court has most recently reaffirmed that procedure in Francis v. Franklin (1985), 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344.

In analyzing evidentiary presumptions in a criminal case, the reviewing court must focus on the particular language used to charge the jury and determine whether a reasonable juror could have interpreted the challenged instruction as an unconstitutional presumption.

> Analysis must focus initially on the specific language challenged, but the inquiry does not end there. If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating [an unconstitutional presumption], the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption.

Francis, 471 U.S. at 315, 105 S.Ct. at 1971, 85 L.Ed.2d at 354 (citation omitted).

4

## PRESUMPTIONS OF ESSENTIAL ELEMENTS

We begin our analysis with a preliminary matter which the United States Supreme Court has not explicitly addressed: whether the challenged presumption must go to an essential element of the crime charged. The United States Supreme Court has consistently reiterated the premise that its holdings on unconstitutional presumptions apply only to presumptions of facts which must be proved before the defendant can be found guilty. See e.g. Francis, 471 U.S. at 313, 105 S.Ct. at 1970, 85 L.Ed.2d at 352 (the Due Process Clause "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime") (emphasis added); Ulster County, 442 U.S. at 156, 99 S.Ct. at 2224, 60 L.Ed.2d at 791 (the presumption "must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt") (emphasis added); Sandstrom, 442 U.S. at 520, 99 S.Ct. at 2457, 61 L.Ed.2d at 49 ("[i]t is clear that under Montana law, whether the crime was committed purposely or knowingly is a fact necessary to constitute the crime of deliberate homicide") (emphasis added). This Court has specifically held that presumptions which create affirmative defenses do not go to an element of the crime charged and, therefore, do not violate due process. State v. Sunday (1980), 187 Mont. 292, 304,

609 P.2d 1188, 1196; State v. McKenzie (1980), 186 Mont. 481, 525, 608 P.2d 428, 454.

In the present case, in view of the wording of the information and Instruction No. 5, the presumption of intoxication does go to an element of the crime charged. "A person commits the offense of negligent homicide if he negligently causes the death of another human being." Section 45-5-104, MCA. A person is criminally negligent under the negligent homicide statute when he

> consciously disregards a risk that the [death] will occur . . . or when he disregards a risk of which he should be aware that the [death] will occur . . . . The risk must be of such a nature and degree that to disregard it involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. "Gross deviation" means a deviation that is considerably greater than lack of ordinary care.

Section 45-2-101(37), MCA. In two previous negligent homicide cases, this Court held that driving under the influence of alcohol may be tantamount to criminal negligence. State v. Cook (1982), 198 Mont. 329, 333, 645 P.2d 1367, 1370; State v. Kirkaldie (1978), 179 Mont. 283, 292, 587 P.2d 1298, 1304; see also Lupro v. State (Alaska 1979), 603 P.2d 468, 474-75; State v. Montieth (Or. 1966), 417 P.2d 1012, 1015. More important to our present analysis is the language of the instructions to the jury. Instruction No. 5 followed the language of the information filed against the appellant:

> You are instructed that the specific charge in this case reads as follows: . . .

6

<u>The facts constituting the offense are</u>:

> That the defendant CLIFFORD R. LEVERETT negligently caused the death of Ronald Lee Scheetz as defined at MCA Section 45-2-101(37) (1987) by driving his motor vehicle . . . into a pedestrian, Ronald Scheetz at an unsafe rate of speed <u>and with a blood alcohol concentration in excess of .10</u> . . . .

(Emphasis added.) From this instruction, a reasonable juror may have concluded that a finding of intoxication was necessary for conviction.

## CLASSIFYING THE PRESUMPTION

Under the United States Supreme Court's analysis, we must undertake a step-by-step classification of the presumption used in this case to determine whether it violated the appellant's right to due process. The first step in this classification is to determine whether a reasonable juror would understand it to be a mandatory or permissive presumption.

> The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes. The court must determine whether the challenged portion of the instruction creates a mandatory presumption or merely a permissive inference. A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

7

*Francis*, 471 U.S. at 313-14, 105 S.Ct. at 1971, 85 L.Ed.2d at 353 (quotation and citation omitted). A permissive presumption does not violate due process so long as a rational connection exists between the predicate and presumed fact. *Ulster County*, 442 U.S. at 157, 99 S.Ct. at 2225, 60 L.Ed.2d at 792. A mandatory presumption, on the other hand, may or may not be constitutional depending on its type and function.

In determining whether a reasonable juror would have viewed Instruction Nos. 11 and 12 as mandatory or permissive, we note that most jurisdictions considering similar jury charges have found that they create mandatory presumptions unless the language of the inference is unambiguously permissive. See e.g. State v. McDonald (S.D. 1988), 421 N.W.2d 492, 496; Barnes v. People (Colo. 1987), 735 P.2d 869, 874; Commonwealth v. Moreira (Mass. 1982), 434 N.E.2d 196, 200; State v. Vick (Wis. 1981), 312 N.W.2d 489, 497; State v. Dacey (Vt. 1980), 418 A.2d 856, 859; State v. Berch (Iowa 1974), 222 N.W.2d 741, 746; but see Commonwealth v. DiFrancesco (Pa. 1974), 329 A.2d 204, 211; Hillery v. State (Ga. App. 1983), 299 S.E.2d 421, 422. Here, the challenged instructions clearly are not permissive. Instruction No. 11 states that "it shall be presumed." Instruction No. 12 states that "the trier of fact must find." By their plain language, the instructions create a mandatory presumption of intoxication.

The next classification step is to determine whether the mandatory presumption is conclusive or rebuttable.

8

> A mandatory presumption may be either conclusive or rebuttable. A conclusive presumption removes the presumed element from the case once the State has proved the predicate facts giving rise to the presumption. A rebuttable presumption does not remove the presumed element from the case but nevertheless requires the jury to find the presumed element unless the defendant persuades the jury that such a finding is unwarranted.

Francis, 471 U.S. at 314, n.2, 105 S.Ct. at 1971, n.2, 85 L.Ed.2d at 353, n.2 (citation omitted). A conclusive presumption eliminates the defendant's right to challenge the presumed fact and violates due process if it goes to an element of the crime charged. Sandstrom, 442 U.S. at 524, 99 S.Ct. at 2459, 61 L.Ed.2d at 51.

The present presumption of intoxication is plainly not conclusive. Instruction No. 11 specifically provides that the presumption is rebuttable and does not limit the defendant's ability to introduce contrary evidence. A reasonable juror could not have found anything but a mandatory rebuttable presumption of intoxication.

As the United States Supreme Court made clear in Francis, a mandatory rebuttable presumption is generally just as unconstitutional as a conclusive presumption because it commonly shifts the burden of persuasion to the defendant.

> A mandatory rebuttable presumption is perhaps less onerous [than a conclusive presumption] from the defendant's perspective, but it is no less unconstitutional. Our cases make clear that such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or

> presumed is impermissible under the Due Process Clause.

Francis, 471 U.S. at 317, 105 S.Ct. at 1972-73, 85 L.Ed.2d at 355 (quotation and citation deleted); see also City of Missoula v. Shea (1983), 202 Mont 286, 294, 661 P.2d 410, 414.

The final step in classifying the presumption of intoxication is one not yet reached by any United States Supreme Court decision. Mandatory rebuttable presumptions may be divided into those which shift the burden of persuasion to the defendant and those which shift the burden of production to the defendant. Ulster County, 442 U.S. at 157, n.16, 99 S.Ct. at 2225, n.16, 60 L.Ed.2d at 792, n.16. The former type is represented by affirmative defenses which require the defendant to meet some specified degree of persuasion to overcome the presumption. Affirmative defenses do not violate due process so long as they do not supplant the traditional elements of the crime charged. Patterson v. New York (1977), 432 U.S. 197, 205, 97 S.Ct. 2319, 2324, 53 L.Ed.2d 281, 289.

The burden-of-production shifting presumptions, however, are much more problematic. They generally go to an element of the crime charged and allow the defendant to overcome the presumption by introducing any contrary evidence. The United States Supreme Court has not yet been faced with the question of whether such presumptions violate due process, Francis, 471 U.S. at 314, n.3, 105 S.Ct. at 1971, n.3, 85 L.Ed.2d at 353, n.3, but the Court has

indicated in dicta that they may be constitutional in some instances:

> To the extent that a presumption imposes an extremely low burden of production--e.g., being satisfied by "any" evidence--it may well be that its impact is no greater than that of a permissive inference, and it may be proper to analyze it as such.

Ulster County, 442 U.S. at 157, n.16, 99 S.Ct. at 2225, n.16, 60 L.Ed.2d at 792, n.16. It would appear, however, that the United States Supreme Court's supposition would not apply to the present case because the presumption of intoxication was presented to the jury.

Were we not looking through the eyes of a reasonable juror, we might understand Instruction No. 12 to make the presumption of intoxication a burden-of-production shifting presumption. Instruction No. 12 states:

> "Presumption" or "presumed" means that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its nonexistence.

The "unless or until" language indicates that the presumption might be overcome as soon as the defendant introduced any contrary evidence.

If this is a burden-of-production presumption, we must ask why it was given as a jury instruction. Such presumptions may serve several purposes, none of which appear to be constitutional when the presumption is presented to the jury. A burden-of-production

11

presumption may establish the State's prima facia case against the defendant's motion for a directed verdict or it may streamline the prosecution by eliminating collateral issues, such as affirmative defenses, until raised by the defendant. See 1 Weinstein's Evidence, ¶ 300[02] (1989). As a procedural device, the presumption presents a question of law for the court. A question of law has no place in the jury charge. State v. Poncelet (1980), 187 Mont. 528, 542, 610 P.2d 698, 706. In the present case, the appellant presented considerable evidence that he was not intoxicated at the time of the accident. As soon as he presented his first witness on the issue, the presumption of intoxication had served its purpose as a procedural device and should have been eliminated for the case. See United States v. Hendrix (2nd Cir. 1976), 542 F.2d 879, 882, cert. den. 430 U.S. 957, 97 S.Ct. 1609, 51 L.Ed.2d 810 (1977); Commonwealth v. Moreira (Mass. 1982), 434 N.E.2d 196, 199; but see State v. Trujillo (N.M. 1973), 510 P.2d 1079, 1084.

Like any other presumption, a burden-of-production presumption may also represent scientific, statistical, or common-knowledge evidence linking the predicate and presumed facts. See 1 Weinstein's Evidence, ¶ 300[02] (1989). Montana's presumption of intoxication is apparently based on evidence demonstrating that a person with a blood-alcohol level of greater than .10 cannot safely operate a motor vehicle. However, even if the presumption's only function is to point out that well recognized relationship to the

12

jury, it still should not be presented to the jury in a manner which places a burden of production on the defendant. If the defendant came forward with no contrary evidence, the presumption would act as a directed verdict for the State on the issue of intoxication. That would be contrary to the due process axiom that the criminal defendant is entitled to sit silent and go free if the prosecution fails to prove every element of the crime beyond a reasonable doubt. See State v. Greeno (1959), 135 Mont. 580, 592, 342 P.2d 1052, 1058. If, on the other hand, the defendant does present contrary evidence, as he did in this case, the presumption is overcome. Presenting the presumption to the jury then serves no purpose except to imply that the defendant has some burden of proof on an element of the crime. The danger of that implication was particularly great in this case because Instruction No. 12 was not unmistakably clear that the appellant could overcome the presumption by producing any evidence that he was not intoxicated.

A reasonable juror could easily have interpreted Instruction No. 12 as shifting the burden of persuasion to the appellant and not as merely shifting the burden of production. The instruction required the jury to find intoxication "unless and until evidence is introduced which would support a finding of its nonexistence." It did not state what quantum of evidence was necessary to support a finding of its nonexistence. A reasonable juror may have believed that the appellant not only had to introduce contrary evidence, but that he had an affirmative duty to convince the jury

13

that he was not intoxicated. As noted above, under _Francis_, such a mandatory rebuttable presumption which shifts the burden of persuasion to the defendant violates due process.

## CORRECTIVE INSTRUCTIONS

An unconstitutional mandatory presumption charged to the jury cannot be cured by other instructions giving a correct statement of the law. The reviewing court cannot determine whether the jury improperly relied upon the unconstitutional instructions or properly relied on the correct instructions but found the defendant guilty anyway. _Francis_, 471 U.S. at 322, 105 S.Ct. at 1979, 85 L.Ed.2d at 358. It is, therefore, no answer to say that Instruction Nos. 3 and 8 informed the jury that the defendant was cloaked in a presumption of innocence throughout the proceeding and that the State could overcome that presumption only by proving every element of negligent homicide beyond a reasonable doubt.

## HARMLESS ERROR

A resort to harmless error analysis also fails to save the unconstitutional instructions. Although at one time the United States Supreme Court refused to apply harmless error analysis to unconstitutional presumptions, _Sandstrom_, 442 U.S. at 526-27, 99 S.Ct. at 2460-61, 61 L.Ed.2d at 52-53, in Rose v. Clark the Court adopted the same harmless error test applied to other types of constitutional errors.

> [I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless error analysis. . . . Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, . . . the judgment should be affirmed.

Rose (1986), 478 U.S. 570, 579, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460, 471. A finding of guilt beyond a reasonable doubt does not require that defendant conceded the presumed fact. The question is to be determined from the entire record. Rose, 478 U.S. at 583, 106 S.Ct. at 3109, 92 L.Ed.2d at 474.

Here the record indicates that intoxication was a hotly debated trial issue. Several witnesses testified that the appellant had little to drink and did not appear to be intoxicated immediately before or after the accident. Two police officers, however, testified that the appellant later failed field sobriety tests. Both parties presented expert witnesses who testified for and against the accuracy of the breath test which registered .121. The evidence also conflicted on the appellant's driving immediately prior to the accident and on how the accident occurred. The recorded evidence is not so clear that we can now step into the shoes of the jury and find the appellant guilty beyond a reasonable doubt. Compare People v. Hickox (Colo. App. 1987), 751 P.2d 645, 647-48 (presumption of intoxication held unconstitutional but harmless because the record contained overwhelming evidence of intoxication).

## THE STATUTE

Our holding that the jury instructions on the presumption of intoxication were unconstitutional does not reach the statute itself. By its plain language, § 61-8-401, MCA, creates a mandatory rebuttable presumption of intoxication. When the 1983 Legislature amended the statute to make the presumption rebuttable, it considered the implications of Sandstrom and apparently decided that the statute was constitutional because the presumption was rebuttable. Consideration of H.B. 540 Before the Senate Judiciary Comm., 48th Leg., (February 10, 1983) at 3-4, and Exhibit A at 5-6 (Testimony of Asst. Att'y. Gen. Steve Johnson). In Francis, the United States Supreme Court nullified that theory by holding that even mandatory rebuttable presumptions are unconstitutional. Francis, 471 U.S. at 317, 105 S.Ct. at 1972-73, 85 L.Ed.2d at 355. Like every other state in the union, Montana adopted the presumption of intoxication to fulfill federal highway funding requirements. See 23 U.S.C. § 408(e)(1)(C); 23 C.F.R. § 1204.4, Highway Safety Program Guideline No. 8, IB. A number of states have saved their unconstitutional statutory versions of the presumption by reading indisputably mandatory language as permissive; in effect, the courts have held that "shall" means "may." See e.g. Barnes v. People (Colo. 1987), 735 P.2d 869, 873; State v. Dacey (Vt. 1980), 418 A.2d 856, 859.

We do not find it necessary to go to such lengths to avoid striking down the statute. The introductory language of § 61-8-

401, MCA, provides that it applies to "any civil or criminal action or proceeding . . . ." In some of the many contexts in which the presumption of intoxication might come into play, it may be constitutional; in others, it may not. That determination will depend on the purpose of the presumption, the type of proceeding, and the particular language used to convey the presumption to the jury. Under our holding today, the presumption of intoxication violates the criminal defendant's right to due process only if the presumption goes to an element of the crime charged and a reasonable juror could read the presumption as mandatory.

## CONCLUSION

The solution to the due process problems of using presumptions in jury charges is not, as was attempted in this case, to make them burden-of-production shifting presumptions. The solution is to make the presumptions unambiguously permissive.

> Because [a] permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.

Ulster County, 442 U.S. at 157, 99 S.Ct. at 2225, 60 L.Ed.2d at 792. While Montana has not yet done so, a large number of

17

jurisdictions have followed the federal courts in adopting evidentiary rules which require that all presumptions presented to juries be clearly permissive. See 1 Weinstein's Evidence, ¶ 303[08] (1989). In the present case, had the language of Instruction Nos. 11 and 12 been modified to make the presumption unmistakably permissive, the instructions would have passed constitutional muster.

In addition, we specifically disapprove the trial court's use of Instruction No. 13, a civil instruction on proximate cause. In drafting appropriate instructions on causation on retrial, the trial court should refer to § 45-2-201, MCA, and to Instruction No. 14 of the Montana Criminal Instructions Guide, along with the evidence presented at trial.

By copy of this opinion, we ask the Supreme Court Commission on Rules of Evidence to consider the advisability of adopting a rule of evidence addressed to presumptions in criminal cases. See Uniform Rules of Evidence, Rule 303 (1974); also 1 Weinstein's Evidence, ¶ 303 (1989).

The case is reversed and remanded for a new trial.

_____
Chief Justice

18

We concur:

_John Conway Harrison_

_[signature]_

_William E. Hunter_
Justices

_Thomas C. Honzel_

Hon. Thomas C. Honzel, District
Judge, sitting in place of
Justice Diane G. Barz

_Ted L. Mizner_

Hon. Ted L. Mizner, District
Judge, sitting in place of
Justice John C. Sheehy

_L. C. Gulbrandson_

Hon. L. C. Gulbrandson, Retired
Justice, sitting in place of
Justice R. C. McDonough